FILED
2014 Feb-21  AM 11:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| NTN-BOWER CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No.   6:12-cv-3002-TMP |
| | ) | |
| INTERNATIONAL UNION, UNITED | ) | |
| AUTOMOBILE, AEROSPACE & | ) | |
| AGRICULTURAL IMPLEMENT | ) | |
| WORKERS OF AMERICA, AFL-CIO, | ) | |
| CLC, and UAW LOCAL 1990, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This cause is before the court on the cross-motions for summary judgment filed by the plaintiff NTN-Bower Corporation ("the Company"), and the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, AFL-CIO, CLC and UAW Local 1990 (referred to collectively as "the Union").  Both motions seek summary adjudication of the sole issue in this case, which is whether a dispute between the Union and the Company is subject to arbitration under a collective bargaining agreement ("CBA"). This matter has been fully briefed, and the motions are supported by evidence and by stipulations of fact filed by the parties.  The parties have consented to the exercise of jurisdiction by the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c); accordingly, the court enters this memorandum opinion.

## PROCEDURAL HISTORY

The Company filed this declaratory judgment action, seeking a declaration that a grievance relating to an employee's right to obtain a shift change by using his or her seniority is not subject to arbitration under the CBA.   The Company asserts that a Mediated Settlement Agreement ("the MSA") that resolved certain pre-existing labor disputes removed from arbitrability the issue of shift changes.   The Union filed an answer and counterclaim (doc. 6), asserting that the grievance relating to shift changes is subject to arbitration pursuant to the collective bargaining agreement ("the CBA") governing the relationship between the parties, because the MSA addresses only "jobs," and not "shifts."   The Union asserts as a counterclaim that the Company's refusal to submit the grievance to arbitration constitutes a breach of contract.   The court has jurisdiction over this action pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185.[1]

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).   The party asking for summary judgment "always bears the initial responsibility of informing the district court of the

---

[1]     The MSA, like the CBA, constitutes an "agreement between employers and labor organizations significant to the maintenance of labor peace between them" and is a "contract" for purposes of Section 301, giving the court jurisdiction over the matter.   See Frech v. Pensacola S.S. Ass'n, 903 F.2d 1471, 1475(11th Cir. 1990).

basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)(quoting Fed. R. Civ. P. 56(c)).

The court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 254 (1986); Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## FACTS[2]

The Company is a corporation engaged in the manufacture of bearings at locations including a plant in Hamilton, Alabama. The Union represents employees at the plant for purposes of collective bargaining. From July 2007 to July 2008, employees at the Company's Hamilton plant went on strike, during which the Company replaced the strikers with 140 permanent employees and 28 temporary employees. At the conclusion of the strike, the Company and the Union entered into the relevant CBA. Article III of the CBA addresses the grievance

---

[2]      The parties have submitted a joint stipulation of material fact (doc. 18) which sets forth the facts that give rise to the instant action. These facts are, thus, by agreement, undisputed.

procedure and contains the following provisions relating to arbitration:[3]

**Arbitration**

The Third Step answer to the grievance may be appealed by the Union to arbitration after the Company's Third Step answer.   The appeal shall be in writing.   If a settlement cannot be reached in the third step, the Union may appeal the grievance to arbitration within ninety (90) regular work days after receipt of the Third Step answer.   If the grievance is not appealed to arbitration with the ninety (90) regular work days, it is considered settled based upon the last Company answer.   The Company and the Union will try to mutually agree upon an Arbitrator to hear the case.   If the Company and the Union do not agree upon an Arbitrator within ten (10) regular work days from the day of the Union's written appeal, they shall, within ten (10) regular work days send a letter jointly to the Federal Mediation and Conciliation Service requesting a list of five (5) Arbitrators.   Upon receipt of the list, the parties shall meet within five (5) regular work days and alternately shall each delete the name of one (1) Arbitrator until only one (1) name remains.   The last remaining Arbitrator shall be selected to decide the grievance(s).   The party to delete the first name shall be determined by lot.   Once the Arbitrator is selected the parties will contact the Arbitrator within five (5) regular work days to schedule the date for the arbitration.

**Section 3**
**Function of Arbitrator**

The Arbitrator shall have only the functions set forth herein.   His authority is confined to the interpretation and application of the express terms of this Agreement and is to be exercised only with respect to claims of the alleged violation of specified terms of this Agreement which have been processed in accord with this grievance procedure. He shall have no power to establish or change provisions of this Agreement.   In reaching a decision, the Arbitrator shall consider only facts and testimonies from witnesses which both the Company and the Union have had an opportunity to interview in prior steps of the grievance procedure.

Collective Bargaining Agreement (doc. 18-1, p. 7).

---

[3]   The arbitration provisions are the fourth step in the procedure for seeking resolution of a grievance, following three steps in which the Company and the Union members attempt to resolve the grievance through internal procedures.

Article VIII of the CBA describes in detail the procedure workers may use to obtain the shifts they prefer:

**Section 1**
**Procedure**

Shift changes shall be made in accordance with the following procedures. Any employee who desires to change shifts will file a shift preference card with the Human Resources Department on a form provided by the Company.   Shift preference cards shall remain in force and are irrevocable for a period of three (3) months from the date the employee first exercises a shift preference, unless filling an opening.   However, he will be able to transfer to a more desirable shift as outlined on his shift preference card provided he has the seniority.

* * * *

**Section 2**
**Requests**

Any employee who has filed a shift preference card with the Human Resources Department for a change in shift will be granted such change provided he has more plant seniority than the employee in the same classification and department he seeks to replace and provided has the present ability to do the work on the new shift.   However, for purposes of this section and for those employees assigned to the Material Handling classification, shift changes will be made solely on the basis of plant-wide seniority unless the employee requests to change shifts within his own department and has sufficient seniority to do so.

Shift changes may be withheld where they hamper operations or interfere with training.

Collective Bargaining Agreement (doc. 18-1, p. 17).

The CBA was executed at the conclusion of a strike that lasted from July 25, 2007, until July 23, 2008, at the Hamilton plant.   During the strike, the Company continued to operate the plant by hiring permanent replacements for its striking employees and by using temporary employees.   After the strike, the Company continued to employ approximately 140 permanent replacements, who had been hired during the strike.   The Company also continued to employ

5

approximately 28 temporary employees.   The Union filed grievances relating to the Company's use of temporary employees rather than re-employing strikers.

On April 20, 2011, the National Labor Relations Board ("the Board") issued an order, reported at 356 NLRB No. 141, finding that the Company's continued use of temporary employees after the strike constituted an unfair labor practice under the NLRA.   The Company sought review of the order with the United States Court of Appeals for the District of Columbia Circuit.   During the pendency of the appeal, an administrative law judge of the Board issued a recommended decision in a separate case, finding that the Company committed an unfair labor practice by withdrawing recognition from the Union.   The Company appealed that decision to the full Board. During the pendency of the appeals, the Union filed additional charges with the Board alleging that the Company committed other unfair labor practices.

The appellate court ordered the appeal of 356 NLRB No. 41 into its mediation program. On May 15, 2012, the Company, the Union, and the Board entered into a Mediated Settlement Agreement ("the MSA"), which resolved not only that appeal, but also the appeal from the ALJ to the Board and the new unfair-labor practices charges filed by the Union during the appeals.   The MSA recites that the parties reached a "resolution of the outstanding issues arising from the Board's Order, the violations found in the subsequent Administrative Law Judge's decision, and the violations alleged in the additional charges."   (Doc. 18-2, p. 3).[4]

As part of the MSA, the Company agreed to offer reinstatement to 60 former strikers, of whom approximately 40 accepted the offer of reinstatement.   The MSA further states that the

---

[4]      Both parties provided the court with what is purported to be the MSA, and page four is missing from both copies (docs. 18-2 and 21-2).   From the arguments made by the parties, it does not appear that any text on page four is relevant to this controversy, or, at least, the arguments do not refer to any text the court cannot find.

parties agreed:

> 8.   The Company will have the right to assign former strikers who accept the Company's offer of employment to any job in the Hamilton, Alabama plant consistent with its business needs, provided they receive the rate of pay and benefits set forth in the Collective-Bargaining Agreement dated December 31, 2007.   After the former strikers are reinstated, they will have the right to compete for available open jobs in accordance with the terms of the current collective bargaining agreement.

> * * * *

> 10.        The   Company   will   recognize   the   Union   as   the   exclusive collective-bargaining representative of the bargaining unit employees at its Hamilton, Alabama plant, which includes the obligation to apply the terms of their Collective-Bargaining Agreement, dated December 31, 2007.   The Union will have access to the plant, bulletin boards, and office as it has traditionally had as collective-bargaining representative.

Mediated Settlement Agreement (doc. 18-2, p. 7).

On July 13, 2012, the Union filed Grievance No. 01-12 on behalf of the former strikers. The grievance asserted that workers had been denied the ability to "use our seniority to select the shift we prefer" in "direct violation of the CBA."   (Doc. 18-3).   The grievance was processed by the parties in accordance with the grievance procedure set forth in the CBA.   On August 27, 2012, the Company denied the grievance.   The Union, by letter dated September 6, 2012, requested that the grievance be submitted to arbitration pursuant to the CBA.   The Company responded on September 18, 2012, asserting that the grievance was not subject to arbitration, and advising the Union that the Company intended to initiate the instant action.

## DISCUSSION

It is well-settled that the federal labor laws embody a policy favoring arbitration where there exists a collective bargaining agreement that provides for arbitration of disputes.   See

United Steelworkers v. American Manufacturing Co., 363 U.S. 564, 80 S. Ct. 1343, 4 L. Ed. 2d

1403 (1960); United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S. Ct.

1347, 4 L. Ed. 2d 1409 (1960); United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S.

593, 80 S. Ct. 1358, 4 L. Ed. 2d 1424 (1960).   The "Steelworkers Trilogy," as those cases have

become known, limits the role of the courts in disputes subject to arbitration under a collective

bargaining agreement.   As the Fifth Circuit Court of Appeals[5] has explained:

> Generally speaking, the court merely ascertains 'whether the party seeking
> arbitration is making a claim which on its face is governed by the contract,'
> American Manufacturing Co., 363 U.S. at 568, 80 S. Ct. at 1346, without regard to
> the merits of the claim; courts must give the arbitration clause a broad reading, with
> all doubts resolved in favor of the arbitration clause's coverage of the dispute.
> Warrior & Gulf Navigation Co., 363 U.S. at 582-83, 80 S. Ct. at 1352-53.
> Moreover, because the parties have bargained for the arbitrator's construction of the
> agreement, courts cannot overrule his decision merely because their interpretation of
> the contract is different from his; the arbitrator's words must 'manifest an
> infidelity' to the collective bargaining agreement.   Enterprise Wheel & Car Corp.,
> 363 U.S. at 597-99, 80 S. Ct. at 1361-62.

Alabama Power Co. v. Local Union No. 391, Internat'l Brotherhood of Elec. Workers, 612 F.2d

960, 962 (5th Cir. 1980).   Arbitration is a matter of contract, and a party can be compelled to

arbitrate a dispute only if he has contractually agreed to do so.   Whether an employer is

contractually required to arbitrate a labor dispute is a matter to be determined by the court, and

parties cannot be forced to arbitrate the arbitrability question itself, even if answering the

---

[5]   The Eleventh Circuit has adopted as binding precedent all of the decisions of the
former Fifth Circuit handed down prior to September 30, 1981. Bonner v. City of Prichard, 661
F.2d 1206, 1209 (11th Cir.1981) (*en banc*).

8

arbitrability question requires the court to evaluate the construction of the CBA.   Local Union No. 898 of International Brotherhood of Electrical Workers, AFL-CIO v. XL Electric, Inc., 380 F.3d 868, 870 (5th Cir. 2004).   The scope of the court's inquiry, however, "must be strictly confined to the question whether the reluctant party did agree to arbitrate the grievance." Warrior & Gulf Navigation Co., 363 U.S. at 582.

The Eleventh Circuit Court of Appeals recently synthesized the rules derived from the Steelworkers Trilogy as follows:

> The first principle gleaned from the Trilogy is that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Warrior & Gulf, supra, 363 U.S., at 582, 80 S. Ct., at 1353; American Mfg. Co., supra, 363 U.S., at 570–71, 80 S. Ct., at 1364–65....

> * * *

> The second rule, which follows inexorably from the first, is that the question of arbitrability—whether a collective-bargaining agreement creates a duty for the parties to arbitrate the particular grievance—is undeniably an issue for judicial determination.   Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.   Warrior & Gulf, supra, 363 U.S., at 582–83, 80 S. Ct., at 1352–53.

> * * *

> The third principle derived from our prior cases is that, in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims.   Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator.

> * * *

> Finally, it has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation

that covers the asserted dispute.   Doubts should be resolved in favor of coverage."
Warrior & Gulf, 363 U.S., at 582–83, 80 S. Ct., at 1352–53.

Jim Walter Resources, Inc., v. United Mine Workers of America, 663 F3d 1322, 1325-26 (11th
Cir. 2011).

      Other circuits have provided similar guidance for courts following the strong federal policy
favoring arbitration.   The Sixth Circuit Court of Appeals set forth four guiding principles that
tract the substance of those stated by the Eleventh Circuit:

> (1) a party cannot be forced to arbitrate any dispute that it has not obligated itself by
> contract to submit to arbitration; (2) unless the parties clearly and unmistakably
> provide otherwise, whether a collective bargaining agreement (CBA) creates a duty
> for the parties to arbitrate a particular grievance is a question for judicial
> determination; (3) in making this determination, a court is not to consider the merits
> of the underlying claim; and (4) where the agreement contains an arbitration clause,
> the court should apply a presumption of arbitrability, resolve any doubts in favor of
> arbitration, and should not deny an order to arbitrate unless it may be said with
> positive assurance that the arbitration clause is not susceptible of an interpretation
> that covers the asserted dispute.

Teamsters Local Union No. 783 v. Anheuser-Busch, Inc., 626 F.3d 256, 261 (6th Cir. 2010).   In
sum, where the collective bargaining agreement contains an arbitration clause that is "susceptible
to an interpretation" that covers the dispute at issue, arbitration is due to be ordered and any doubts
should be resolved in favor of coverage.   See International Association of Machinists and
Aerospace Workers, Seminole Lodge 971 v. United Technologies Corp., 778 F.2d 1562, 1564
(11th Cir. 1986).

      There is no dispute as to whether the parties to this action are parties to a collective
bargaining agreement, or whether the CBA contains an arbitration clause.   The parties agree that
the CBA has been "in effect at all times relevant to this action."   (Joint Stipulation, attached to

Doc. 18, ¶ 7).   The clause, while not the drafted in the broad language sometimes employed to cover "any dispute," still gives to the arbitrator "the interpretation and application of the express terms of this Agreement."   (Doc. 18-1, p. 7).   One of the express terms of the CBA is the procedure for obtaining a shift change.   (Doc. 18-1, p. 17).   The court must read the arbitration clause broadly, and must resolve all doubts in favor of arbitration coverage.   Alabama Power, 612 F. 2d at 963.   The court is required to apply a presumption of arbitrability that can be overcome only if there is a "positive assurance" that the arbitration clause does not apply.   In this case, the CBA contains an arbitration clause that is "susceptible to an interpretation" and which covers the dispute over shift changes.   The arbitration of that issue is due to be compelled.

The Company's motion for summary judgment seeks to avoid this conclusion by asserting that the parties reached a "grand bargain" memorialized by the MSA, which effectively "compromised" the CBA.   In effect, the Company argues a modification of the CBA was negotiated by the parties and memorialized in the MSA, and that it had the effect of requiring reinstatement of strikers only to "available open jobs."   This, the Company asserts, means that the shift-change provisions of Article VIII were also superseded by the MSA.   The court believes there are several problems with this argument.   First, a close reading of the MSA (or the portions the parties have provided to the court) does not justify this position.   The MSA specifically recites that the parties "reached a resolution of the outstanding issues arising from the Board's Order, the violations found in the subsequent Administrative Law Judge's decision, and the violations alleged in the additional charges."   (Doc. 18-2, p. 3).   On its face, the MSA does not purport to replace, repeal, or alter any provisions of the CBA, except the provision regarding "jobs" available to former strikers who accept the offers of re-employment.   The MSA limits the "jobs" to which they may be reinstated to "any job in the Hamilton, Alabama plant consistent with [the Company's]

11

business needs, provided they receive the rate of pay and benefits set forth in the Collective-Bargaining Agreement...."[6]   Further, it explicitly preserves rights under the CBA so that "[a]fter the former strikers are reinstated, they will have the right to compete for available open jobs in accordance with the terms of the current collective bargaining agreement."   The MSA does not contain any reference limiting "shifts" or "shift changes" or "shift preference cards." In the CBA, "Job Bidding" is dealt with in an article (Article VII) separate and apart from the article dealing with "Shift Changes" (Article VIII).   The MSA clearly left intact articles of the CBA dealing with overtime pay, holidays, safety and health, and non-discrimination, to name a few.   There is no reason to conclude that the parties intended to alter any part of the CBA except those explicitly mentioned in the MSA.   The Company's position seems to be that "jobs" and "shifts" were completely different entities when the CBA was drafted, but somehow became the same thing after the MSA was drafted.   This is without merit.

        Second, the Company's argument that construing the shift-change provisions of the CBA without reference to the "available open job" language of the MSA would require an arbitrator to go outside the four-corners of the CBA also is meritless.   Here, the question for the court is not the merits of the labor dispute, but simply whether the dispute *is* arbitrable under the CBA.   Have the parties agreed to arbitrate shift-change disputes notwithstanding the MSA?   Under the presumption favoring arbitration, it is arbitrable unless the MSA clearly, with "positive

---

[6]        Neither party identifies whether the Union or the Company acted as a drafter of the MSA, and there is no assertion that the MSA may be construed against a particular party as the drafter under general principles of contract law.   Nonetheless, the MSA cannot be construed as altering the scope and nature of the arbitration clause in the CBA unless it does it so clearly that the court can say with "positive assurance" that the clause does not apply.   Ambiguity, regardless of whom it might be construed against, undermines the notion that the court can state with "positive assurance" that MSA altered the CBA to eliminate the applicability of the arbitrate clause to this dispute.

assurance," removed the shift-change provisions from the arbitration clause, which all parties agree still exists and is enforceable.   For the reasons explained above, the court cannot say with such "positive assurance" that the arbitration clause does not apply.   To the extent, therefore, the court finds that the MSA did not remove the shift-change provisions from the arbitration clause in the CBA, the arbitrator is not required to construe the CBA in the light of the MSA, at least as to this dispute.

But even if the arbitrator is required to construe the CBA in light of the MSA, even the Company concedes the MSA is a modification of the CBA; it is now, according to the Company, part and parcel of the CBA itself.   Thus, the arbitrator can examine the CBA shift-change provisions in light of whatever modification of the CBA occurred in the MSA.

## CONCLUSION

The court simply cannot say with "positive assurance" that MSA altered the applicability of the arbitration clause to this dispute.   As such, the presumption of arbitration coverage requires a finding that the issue remains arbitrable under the CBA.   Accordingly, the Company's request for a declaration of non-arbitrability of the shift-change grievance is due to be denied.   Based on the foregoing undisputed facts and legal conclusions, the court determines the motion for summary judgment filed by the Company (doc. 19) is due to be denied, and the countermotion for summary judgment filed by the Union (doc. 22) is due to be granted.   The court further determines that the parties shall be ordered to arbitrate the dispute arising from Grievance 01-12 regarding shift changes.

A separate order will be entered in accordance with the findings set forth herein.

Dated the 21st day of February, 2014.

T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE